IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 10-434 |
| | § | |
| DOROTHY J. PHILLIPS and | § | |
| JOE B. PHILLIPS | § | |

**ORDER ON THE DEFENDANTS' MOTIONS TO CLARIFY/MODIFY RESTITUTION**

The United States submitted a consolidated response to Joe B. Phillips's and Dorothy B. Phillips's Motions to Clarify/Modify Restitution Order. (Docket Entry Nos. 190-91, 194-95.) The United States did not oppose the defendants' requests for adjustment of their restitution payment schedules, but asked the court to require them to pay no less than $100 per month combined. The court grants the motions in part and denies them in part for the reasons set out below.

The defendants were prosecuted for their roles in a four-year-long fraudulent scheme to embezzle and misappropriate benefits paid to veterans who were incompetent to manage their own affairs and for whom Mr. Phillips acted as guardian or fiduciary. (Docket Entry No. 99, at ¶ 14; Docket Entry No. 122 at ¶ 14.) Both defendants pleaded guilty to conspiracy to misappropriate veterans benefits by a fiduciary, and to filing a false federal income tax return. (Docket Entry No. 99 at ¶ 1; Docket Entry No. 122, at ¶ 1.) The remaining counts against them were dismissed. (Docket Entry Nos. 138, 147.)

Mrs. Phillips was sentenced to serve 46 months in prison and 3 years on supervised release, and to pay $200 in special assessments. She was also required to pay $2,352,107.84 in restitution

to the Veteran's Administration, making $250 in monthly payments beginning 60 days after her release from incarceration. (Docket Entry No. 140; *id*. at 7.)

Mr. Phillips received a 46-month prison term and a 3-year supervised-release term. He was ordered to pay $200 in special assessments and also to pay $2,352,107.84 in restitution to the Veteran's Administration, jointly and severally with his wife. (Docket Entry No. 150.) He too was ordered to make $250 monthly payments beginning 60 days after his release from incarceration. (*Id.* at 7.)

The restitution imposed was mandatory under the Mandatory Victims Restitution Act. It is the amount the Veteran's Administration lost as a result of the defendants' fraud. *See* 18 U.S.C. §§ 3663A(c)(1) & 3664(f)(1)(A). The court took account of the defendants' financial resources and obligations when it established the payment schedules. *See* 18 U.S.C. § 3664(f)(2) (listing factors for consideration); 18 U.S.C. § 3572(d)(2) (restitution payment plans should allow no longer than reasonably necessary to accomplish full payment). Even when full payment of restitution is unlikely, a payment schedule should require a defendant to pay as much as his or her individual financial circumstances reasonably allow.

The defendants ask the court to reduce their monthly restitution payments under 18 U.S.C. § 3664(k), which permits adjustment when the court is notified of "any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." During their respective terms of supervised release–which began on May 19, 2016 for Mrs. Phillips and on May 27, 2016 for Mr. Phillips–each defendant made monthly restitution payments of between $10 to $50. In addition to these payments, both defendants were enrolled in the Treasury

Offset Program, which began offsetting Mr. Phillips's monthly civil service annuity payments on March 1, 2017, applying $212 to pay his restitution debt.

The defendants received early termination from supervision on March 31, 2017. (Docket Entry Nos. 192, 193.) As soon as the Financial Litigation Unit of the U.S. Attorney's Office learned of the termination–in mid-April 2017–it sent financial disclosure forms, which the defendants returned in early May. The defendants met with members of the Financial Litigation Unit in June 2017 to discuss their disclosures and clarify certain expenses. Shortly after this review, the United States removed the defendants from the Treasury Offset Program. This action was based on the defendants' present fixed incomes and documented living expenses. There is some procedural delay before offsets cease, but that action has been ordered.

The following table summarizes the financial documents the defendants provided:

**Table One**

| **Monthly Income** | |
|---|---:|
| United States Civil Services Annuity (Joe Phillips) | $908[1] |
| Social Security (Joe Phillips) | $524 |
| Social Security (Dorothy Phillips) | $884[2] |
| *Total* | **$2,316** |
| **Recurrent Living Expenses (on an average, monthly basis)[3]** | |

---

[1] Amount to be offset.

[2] According to a letter from the Social Security Administration, Mrs. Phillips's benefits will be reduced from $1,058 to $884 beginning in June 2017, due to an automatic deduction for Medicare Part B (medical insurance).

[3] These figures were rounded up and converted as necessary to monthly amounts. Variable expenses were calculated by averaging documented expenses over a period of several months.

| Property taxes on homestead | $103 |
| Utilities on homestead (trash, electricity, gas, sewer /water, landline telephone, internet, and home security) | $467 |
| Homeowners insurance on homestead | $129 |
| Home repairs on homestead | $120 |
| Auto insurance and operating costs for two vehicles (tolls not included) | $239 |
| Health insurance, life insurance, and out-of-pocket medical expenses | $170 |
| Food, groceries, and other incidentals | $500 |
| *Total* | **$1,728** |

The United States does not oppose the defendants' request to reduce their monthly restitution payments under 18 U.S.C. § 3664(k), to a combined payment of no less than $100. The court agrees and modifies the amounts to require $50 from each defendant each month.

The defendants' proposed amount of $10 from each is both inadequate and less than the defendants are able to pay on a monthly basis. As the government notes, the defendants' discretionary spending includes at least $100 per month for cable television; $80 per month on utilities for a second property in Crockett, Texas, that is apparently shared by members of the defendants' extended family; and $200 per month to a company known as "Tax Defenders." In return for this monthly fee–which is automatically debited from defendants' bank account and is scheduled to continue until 2019–"Tax Defenders" apparently monitors the IRS to ensure that it does not pursue enforcement against the defendants for past-due income taxes. The defendants began this $200 monthly payment in 2016 to protect their own financial interests.

Mrs. Phillips suggests that the court should direct the United States to place her debt in suspense, under U.S. Attorneys' Policy and Procedures 3-12.400.001. (Docket Entry No. 194, at 3.) The Financial Litigation Unit placed both the defendants' restitution debts in suspense in 2013. This internal accounting designation does not mean that the United States ceases enforcement on the debt or that the defendants are no longer required to make nominal payments on the debt.

Mrs. Phillips also asks the court to specify that nonfederal payees should be paid before the Veteran's Administration, an apparent reference to nonfederal debtors in the defendants' bankruptcy case. (Docket Entry No. 190, at 1; Docket Entry No. 194, at 2.) There are no nonfederal payees in the defendants' judgments and therefore no prioritization to order under 18 U.S.C. § 3664(i).

The United States does not oppose, and the court orders, adjustment of the defendants' restitution payment schedules under 18 U.S.C. § 3664(k) to $50 per defendant per month. All other relief is denied.

SIGNED on June 21, 2017, at Houston, Texas.

_____  
Lee H. Rosenthal  
Chief United States District Judge